IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL INSURANCE COMPANY
15 Mountainview Road
Warren, NJ 17360

    Plaintiff

v.

DELORIS COMPTON
5624 Roundtree Drive
Woodbridge, Virginia 22193

    Defendant

Case: 1:07-cv-01537
Assigned To : Walton, Reggie B.
Assign. Date : 8/29/2007
Description: General Civil

## COMPLAINT

COMES NOW, Plaintiff, Federal Insurance Company ("Federal"), through undersigned counsel, with this Complaint and in support thereof, states as follows:

### Jurisdiction

1.    Plaintiff is Federal Insurance Company, a foreign corporation incorporated in the state of Indiana with its principal place of business in Warren, New Jersey. Plaintiff is licensed to do business in the District of Columbia.

2.    Plaintiff provided a Crime Insurance Policy to Paralyzed Veterans of America ("PVA"), which is located in the District of Columbia. Plaintiff made payments to PVA under that policy as a result of Defendant's wrongful conduct. In consideration for those payments by Plaintiff, PVA assigned all its rights, claims and actions against Defendant to Plaintiff.

3.    Defendant is currently incarcerated in Virginia but owns property and normally resides in Dale City, Virginia. Plaintiff is scheduled to be released from prison in or about November 2007. At the times relevant to this litigation, Defendant was employed by PVA.

4. This case involves tortious conduct by Defendant that occurred in the District of Columbia.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

### Background Facts

6. Defendant was hired by PVA on April 6, 1992, and was a member of PVA's finance team. PVA is a non-profit chartered by Congress to help veterans of the armed forces who have experienced spinal chord injury or dysfunction. PVA uses its expertise to meet the special needs of its members through efforts aimed at improving members' receipt of health care and other benefits, by supporting research regarding spinal chord injury, and by working to maximize the independence of its members by protecting members' civil rights.

7. During her employment with PVA, Defendant was the Accounts Payable Supervisor. Through this position, Defendant had access to PVA's checks which were drawn on an account held with Bank of America.

8. From October 2001 through October 2005, Defendant stole money from PVA by writing approximately 29 checks to herself drawn on PVA's accounts in the total amount of $182,858.97. In carrying out this scheme, Defendant altered the computer records for those checks to give the false impression that the checks had been voided. This fraudulent concealment was intended to prevent PVA from discovering Defendant's wrongful conduct.

9. The initial discovery of Defendant's wrongful conduct occurred in November 2005 by PVA's auditors while they were reviewing PVA's financial records. During this review, the auditors discovered that all cleared check reports from PVA's bank were missing for 2005. As a result, PVA ordered replacements from the bank.

10. When the auditors reviewed the September 2005 bank reconciliation, it was discovered that one voided check had actually cleared PVA's account for $5,924.65. PVA ordered a copy of the check from the bank at which time the auditors discovered that the check was made out to and endorsed by Plaintiff.

11. Upon discovery of the PVA check that Plaintiff made out to herself and negotiated, PVA began an investigation of all additional PVA reconciliations for prior fiscal years. During this investigation, PVA discovered that Defendant had written 23 checks to herself and deposited these checks into her personal bank account at Bank of America. The total amount of checks that PVA discovered that Defendant had deposited into her personal account was $148,467.14.

12. As a result of Defendant's wrongful conduct, PVA incurred additional expenses with the auditors in the amount of $9,700.00 for expenses incurred in paying the auditors to review the financial records to investigate Defendant's theft of money. But for Defendant's conduct, these additional charges would not have been incurred.

13. PVA reported Defendant's wrongful conduct to the District of Columbia Metropolitan Police Department on December 5, 2005, which, in turn, conducted an investigation. The investigation was presented to the U.S. Attorney's Office and assigned case number CF05-1718. Defendant admitted to the FBI that she stole the money from PVA.

15. During the U.S. Attorney's investigation, the U.S. Attorney discovered six additional checks that were written to Defendant by Defendant from PVA's account in the amount of money to $34,391.83, bringing the total amount of embezzled money to $182,858.97. The investigation revealed the following:

a. In October 2001, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $4,502.32, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

b. In December 2001, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $4,220.00, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

c. In December 2001, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $9,051.59, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

d. In May 2002, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $8,980.70, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

e. In September 2002, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $4,798.00, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

f. In October 2002, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $6,640.72, which she deposited into her personal

account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

   g.  In November 2002, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $4,083.00, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

   h.  In December 2002, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $4,533.02, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

   i.  In January 2003, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $6,933.02, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

   j.  In March 2003, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $6,549.32, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

   k.  In May 2003, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $6,415.96, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

l.   In July 2003, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $6,958.49, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

m.   In October 2003, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $6,987.54, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

n.   In November 2003, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $7,349.67, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

o.   In December 2003, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $4,359.68, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

p.   In January 2004, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $6,540.24, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

q.   In March 2004, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $6,453.32, which she deposited into her personal

account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

  r. In June 2004, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $7,345.52, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

  s. In June 2004, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $3,888.57, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

  t. In August 2004, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $6,235.42, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

  u. In November 2004, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $6,935.43, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

  v. In January 2005, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $6,321.52, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

- 8 -

  w. In January 2005, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $6,235.15, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

  x. In March 2005, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $6,324.56, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

  y. In June 2005, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $6,587.02, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

  z. In May 2005, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $8,952.36, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

  aa. In July 2005, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $5,924.65, which she deposited into her personal account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

  bb. In October 2005, Defendant embezzled money from PVA by writing a check from PVA's account in the amount of $6,397.45, which she deposited into her personal

account. Defendant did not have authority from PVA to write herself a check or to deposit PVA's funds into her account.

16. The total amount Defendant embezzled from PVA from October 2001 through October 2005 was $182,858.97. The initial discovery of Defendant's wrongful conduct did not occur until November 2005.

17. After investigating Defendant's wrongful misappropriation of PVA's funds, the United States filed criminal charges against Defendant.

18. On June 30, 2006, Defendant pled guilty to a violation of Title 18, United States Code, Section 2314 (Interstate Transportation of Stolen or Fraudulently Obtained Property).

19. PVA reported Defendant's wrongful conduct to Plaintiff and made a claim under its Crime Insurance Policy. Plaintiff was damaged by Defendant's conduct in that it had to make payments to PVA under that Crime Insurance Policy. As a result of Plaintiff's payment to PVA, PVA assigned all of its rights, title and interest in any recoveries obtained from Defendant as a result of Defendant's tortious conduct to Plaintiff. Additionally, because Plaintiff made payments under the policy, Plaintiff was damaged as a result of Defendant's conduct and is now the subrogee and assignee of PVA's claims against Defendant.

### Count One: Conversion

20. Plaintiff adopts and incorporates the allegations contained in paragraphs 1-19 as though fully set forth herein.

21. Through her position of employment at PVA, Defendant had check writing authority and, hence, Plaintiff had access to PVA's checks.

22. Defendant, as the Account Payable Supervisor, held a trusted and fiduciary position at PVA and was expected to perform her job responsibilities in a lawful manner.

23. From October 2001 through October 2005, Defendant wrongfully took PVA's checks, made the checks out to herself and deposited the checks into her personal account.

24. Defendant did not have permission or authority from PVA to take PVA's money and deposit it into her personal account.

25. This wrongful taking damaged PVA in the amount of $192,558.97, plus interest. As the assignee and subrogee of PVA's claims, Plaintiff has standing to pursue this claim against Defendant.

26. Defendant's repeated conduct in taking PVA's money and placing it into her account was intentional and done with malice and ill will.

27. Defendant's conduct in attempting to cover up her conversion scheme is further evidence of her malice and ill will.

WHEREFORE, Plaintiff Federal Insurance Company demands judgment against Defendant Deloris Compton for compensatory damages in the amount of One Hundred Ninety-Two Thousand Five Hundred and Fifty-Eight Dollars and Ninety-Seven Cents ($192,558.97), punitive damages in the amount of Two Hundred Thousand Dollars ($200,000.00), interest and costs, and such other relief this Court deems appropriate.

### Count Two: Fraudulent Misrepresentation

28. Plaintiff adopts and incorporates the allegations set forth in paragraphs 1-19 as though fully set forth herein.

29. Through her position of employment at PVA, Defendant had check writing authority and access to the financial records of PVA and PVA's checks.

30. Defendant, as the Accounts Payable Supervisor, held a trusted and fiduciary position at PVA and was expected to perform her job responsibilities in a lawful manner.

31. From October 2001 through October 2005, Defendant made repeated misrepresentations to PVA in the form of her accounting. Specifically, Defendant claimed that 29 PVA checks were "voided" when, in fact, they were live checks that Defendant made out to herself and deposited into her account.

32. On 29 separate occasions, Defendant fraudulently represented to PVA that the checks she wrote to herself were actually void checks and indicated such in PVA's financial records.

33. Defendant knew that her representations that the checks were void was false.

34. Defendant made the representations with the intention of deceiving PVA.

35. PVA justifiably relied upon Defendant's representations that the checks she recorded as "void" were actually "void".

36. PVA and Plaintiff suffered damages as a result of PVA's justifiable reliance on Defendant's statements that the checks that were "void".

WHEREFORE, Plaintiff Federal Insurance Company demands judgment against Defendant Compton for compensatory damages in the amount of One Hundred Ninety-Two Thousand Five Hundred and Fifty-Eight Dollars and Ninety-Seven Cents ($192,558.97), punitive damages in the amount of Two Hundred Thousand Dollars ($200,000.00), interest and costs, and such other relief this Court deems appropriate.

Respectfully submitted,

Jennifer S. Jackman (#466922)
Whiteford, Taylor & Preston L.L.P.
1025 Connecticut Avenue, NW
Washington, DC 20036-5405
(202) 659-6800

205960

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
FEDERAL INSURANCE COMPANY

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __88888__
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS
DELORIS COMPTON

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __88888__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Jennifer S. Jackman    202-659-6800
Whiteford, Taylor & Preston, LLP
1025 Conn. Ave., NW, #400, Wash. DC 20036

ATTORNEYS

Case: 1:07-cv-01537
Assigned To : Walton, Reggie B.
Assign. Date : 8/29/2007
Description: General Civil

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

☐ **A. Antitrust**
☐ 410 Antitrust

☐ **B. Personal Injury/Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency Review**
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

☐ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

☒ **E. General Civil (Other)**  OR  ☐ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☒ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ G. *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ H. *Employment Discrimination*<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ I. *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ J. *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ K. *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ L. *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ M. *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ N. *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ Multi district Litigation   ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 USC Section 1332.  Jurisdiction based on diversity of citizenship.  Wrongful conduct occurred in the District of Columbia.

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  ☐   DEMAND $ 193,000 +   Check YES only if demanded in complaint   JURY DEMAND: ☐ YES  ☒ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   ☐ YES  ☒ NO   If yes, please complete related case form.

DATE 8/29/07   SIGNATURE OF ATTORNEY OF RECORD  Jennifer S. Jackman

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

  I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

  III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

  IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

  VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

  VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.